## MORGAN ET AL. *v.* CATHERWOOD ET AL.

[No. 13,082.   Filed August 29, 1929.   Rehearing denied January
17, 1930.   Transfer denied December 8, 1932.]

*Dyer & Dyer* and *Fraser & Isham,* for appellant.

*Addison K. Sills* and *Charles M. Snyder,* for appellee.

REMY, J.—Allen T. Catherwood died testate in the year 1892, leaving surviving him his widow, Cornelia

Catherwood, and his three children, Robert, Maud, and Naomi Catherwood, appellees herein. At the time of his death, Allen T. Catherwood was the equitable owner of 840 acres of land in Benton County known and hereinafter referred to as the Ambia farm. Items 5 and 10 of the will are as follows:

"5. I hereby direct that my executors shall strictly comply with the terms of a written contract between myself and one Thomas Hoopes, pertaining to land lying northeast of Ambia, Benton County, State of Indiana, and that the rents and profits therefrom shall be used to comply with the terms of that contract so far as the same may be required, and that the land therein described and also described in a written contract with Thomas Williams, in which he and I have agreed upon a division of the land to be devised, from said Thomas Hoopes or his legal representatives, shall be deeded by the said Hoopes or his legal representatives to my wife and children jointly, and my executors shall exercise absolute control and possession over the said land until my son Robert shall arrive at the age of thirty years or would be of such age if living, and any incumbrances placed thereon before said Robert my son shall arrive at the age aforesaid, or would arrive should he live, shall be absolutely null and void, and the rents and profits received after the same shall have been deeded, as aforesaid, after paying all taxes and expenses and making necessary improvements, shall be used for the support and education of my said children, and the remainder, if any, shall be put out at interest on first mortgage real estate security."

"10. I hereby direct that as fast as my children arrive at lawful age they shall be entitled to receive of my executors on demand their proportion of the income thereof from said land after deducting necessary expenses."

Soon after the death of Allen T. Catherwood, his widow and his brother, James Catherwood, having been named in the will as executors and trustees, qualified and took charge of the estate. On May 6, 1897, in com-

pliance with the terms of the contract with Hoopes, the land was conveyed to Cornelia Catherwood, the widow, Robert, Maud and Naomi Catherwood, children of testator. In the year 1900, James C. Catherwood resigned as executor and trustee, and Robert Catherwood was appointed co-executor and co-trustee with his mother Cornelia Catherwood. On August 7, 1904, Robert became thirty years of age, at which time it was mutually agreed by Robert and his mother and sisters, that Robert and his mother, as trustees, should continue to manage the farm as theretofore; and it was further agreed that Robert should have the active management, and that out of the proceeds the mother should receive $130 per month, and the three children $100 per month each. For his services in managing the farm, Robert was to receive no remuneration, but was to receive his actual expenses. In 1905, Cornelia and the three children became residents of Chicago, Naomi having previously intermarried with Nels Hokenson. There was harmony among the members of the family until 1911, at which time Robert sought to have his mother and sisters sign a trust agreement relating to the Ambia farm, by the terms of which he was to become sole trustee. Upon refusal of his mother and sisters to execute the agreement, Robert threatened to, and did, withhold from them the monthly payments for June and July, 1911. Whereupon they employed appellant Wisner as their attorney to represent them in the controversy. No settlement having been effected, Robert, as one of the trustees, filed a bill in equity in Cook County, Illinois, against his mother and sisters, wherein he sought a construction of his father's will, to recover for his services, and to enjoin the defendants from bringing suit to partition the lands. To defend this suit, the mother and sisters of Robert employed the firm of Chytraus, Healy and Frost to assist Wisner. During the pendency of this

suit, Cornelia Catherwood, Maud Catherwood and Naomi Hokenson commenced a suit in the Benton Circuit Court against Robert Catherwood for partition of the Ambia farm, and for an accounting, appellee Dinwiddie, an attorney at law, appearing for them as local counsel. Robert was unsuccessful in the trial of his suit in Cook County, but on appeal to the Illinois Appellate Court the judgment was reversed. Following this reversal, Robert made settlements with his mother and his sister Maud, by the terms of which Maud was to, and did, on July 13, 1916, in consideration of $40,000, convey to Robert her interest in the farm in question; and his mother was to, and did, on August 6, 1916, convey to Robert her interest in the farm, in consideration of $10 and an agreement to pay to grantor the sum of $130 per month during her lifetime, she being at the time seventy-six years of age and in feeble health. The legal services rendered by Wisner and the law firm of Chytraus, Healy and Frost on behalf of Cornelia Catherwood, Maud Catherwood and Naomi Hokenson were continuing from the time of their first employment, the last service having been rendered July 2, 1915. The account for legal services not having been paid, Wisner, on June 27, 1920, began an action to enforce collection. Likewise on the same day Healy, surviving partner of the firm of Chytraus, Healy and Frost, commenced an action to collect amount due for attorneys' fees rendered by them. These actions were instituted in Cook County, Illinois, where all of the parties then resided. On December 2, 1920, Naomi Hokenson paid to Wisner and Healy her proportionate part of the attorneys' fees, in consideration of which, they, in writing, released her from further obligation, and agreed not to sue her, and as to her to dismiss the action then pending, which was done. Cornelia and Maud Catherwood not having paid their part of the attorneys' fees, trials of the cases resulted in judg-

ments against them, which judgments were reversed on appeal to the Illinois Appellate Court. Pending appeal of these cases, Cornelia died, and, after the judgments were reversed, Wisner and Healy, as surviving partner, filed their respective claims for attorneys' fees against her estate, letters of administration having been issued by the Benton Circuit. Court to appellant, Wilbur F. Morgan. The claims were allowed, and the administrator, to procure assets with which to pay the claims, began this suit against appellee, Robert Catherwood, and Lucy Catherwood, his wife, to set aside the conveyance to Robert by Cornelia Catherwood of her interest in the Ambia farm, it being charged in the complaint that the conveyance was without consideration and was made for the purpose of defrauding Wisner and Healy of their claims for attorneys' fees. Appellees, Maud Catherwood, Naomi Hokenson and Lee Dinwiddie, and appellants, Carl V. Wisner and John J. Healy, surviving partner of the firm of Chytraus, Healy and Frost, were joined as parties defendant to answer to their respective interests, if any.

To the complaint, Wisner and Healy, as surviving partner, filed a cross-complaint against the other defendants and the plaintiff, charging as in the complaint, that the conveyance of Cornelia Catherwood to Robert Catherwood was fraudulent, and praying that it be set aside, and that the land be sold to pay the claims.

Robert Catherwood and wife answered the complaint in five paragraphs: (1) Denial; (2) statute of limitations of the State of Illinois; (3) pleaded the judgment in suit for partition of the Ambia farm brought in the Benton Circuit Court by decedent and her two daughters against appellees, Robert and Lucy Catherwood; (4) pleaded that the debt described in the complaint and in the cross-complaint was the joint debt of Cornelia Catherwood, Maud Catherwood and Naomi Hokenson, and

that Wisner and Healy, on December 2, 1920, executed in the State of Illinois, a certain writing set out in the answer, which writing is alleged to have operated as a release of Naomi Hokenson, thereby releasing the other joint debtors; and (5) alleged that the claims of Wisner and Healy were joint obligations of Cornelia Catherwood and her two daughters, Maud and Naomi, and that the daughters each had property in Benton County sufficient to pay the claims in full, and, thus having an adequate remedy at law, the claimants could not resort to equity. Similar answers by Robert and his wife were filed to the cross-complaint. To the answers, Morgan, as administrator, replied in four paragraphs: (1) Denial; (2) pleaded facts avoiding the operation of the Illinois statute of limitations; (3) was a reply to the answer setting up the judgment in partition as *res adjudicata*, and pleaded that before the judgment was rendered, as shown by the judgment entry, the cause was dismissed as to Cornelia Catherwood, and that the judgment was based upon the fraudulent deed; and (4) sets up that the covenants of the claimants Wisner and Healy not to sue Naomi Hokenson were executed in Illinois and were governed by the laws of that state, under which laws the covenants not to sue did not operate as a release of the other joint debtors, but did prevent suit against Naomi Hokenson; that Maud Catherwood had conveyed her interest in the Ambia farm to Robert Catherwood long before the commencement of the action, and, therefore, had no property in Indiana, and that the only remedy left to Wisner and Healy by which their claims could be paid was to set aside the deed as prayed in the complaint. Replies were filed by Wisner and Healy setting up substantially the same facts. Maud Catherwood filed answers in denial to the complaint and cross-complaint.

On the issues thus formed, the cause was submitted

to the court for trial, and at the request of appellant the court found the facts specially and stated its conclusion of law based on the facts so found.

In addition to the facts above stated, the court found that on May 6, 1897, Cornelia Catherwood, Robert Catherwood, Maud Catherwood, and Naomi Hokenson became and were the owners as joint tenants of the Ambia farm; that upon her death Cornelia left no assets other than the land in question; that appellants, Wisner and Healy, and appellee Dinwiddie, have valid claims against the estate of Cornelia, the amount of each claim being fixed by the findings; that those claims can be paid only by setting aside the conveyance in controversy; that the conveyance was without consideration and fraudulent and was made for the purpose of defrauding creditors, especially claimants Wisner and Healy; that in the partition suit the cause was dismissed as to Cornelia before the judgment was rendered; that the judgment which was rendered was based upon the fraudulent deed; and that claimants Wisner, Healy and Dinwiddie were not parties to the judgment, nor was any member of the firm of Chytraus, Healy and Frost a party thereto; that in December, 1920, "long prior, ever since and now, covenants not to sue executed by the creditor to one of two or more joint debtors . . . did not operate to release the other joint debtors; that under such laws of the State of Illinois", the agreements not to sue Naomi Hokenson, executed by Wisner and Healy, surviving partner, "did not operate to release the said Cornelia Catherwood and Maud Catherwood from the payment of said debt"; that Naomi Hokenson is solvent, and at all times has had property sufficient in the State of Indiana to satisfy the claims of the three creditors joining in this suit.

The conclusions of law based on these findings are:

That neither the plaintiff nor the cross-complainants are entitled to have the conveyance in question set aside, and that Robert Catherwood and wife are entitled to recover from plaintiff and cross-complainants their costs.

It is to be observed that the court by its special finding found against appellees Robert and Lucy Catherwood on the issue presented by their answer in denial, finding that the claims of Wisner and Healy were valid and the conveyance fraudulent as averred in the complaint; also the finding was against them on the issue presented by their answer setting up the Illinois statute of limitations; likewise on their answer that the settlement of claimants with Naomi Hokenson was a release of the other joint debtors, for the court found as a fact that, under the laws of the State of Illinois in force at the time, the settlement with, and agreement not to sue Naomi Hokenson, did not operate to release Cornelia and Maud Catherwood; and the court found against them on the issue of *res adjudicata*, finding that the decree in the partition suit was, in fact, based upon the fraudulent deed, and that the suit for partition was dismissed as to Cornelia before the partition decree was rendered. The only affirmative defense pleaded by Robert and Lucy Catherwood, on which the court's finding was in their favor, was that pleaded in the fifth paragraph of answer, which was, in substance, that the claims of Wisner and Healy were for services rendered Cornelia Catherwood, Maud Catherwood and Naomi Hokenson, jointly; that Naomi Hokenson was solvent and owned property within the State of Indiana sufficient to pay the claims; it being the theory of that answer, that by their settlement with Naomi, the claimants Wisner and Healy voluntarily cast aside their legal remedy, and that, therefore, the suit in equity to set aside the conveyance for the purpose of producing assets

to pay their claims could not be maintained by them or in their behalf. It clearly appears from the record that it was upon this finding that the court based its conclusions of law and rendered judgment for appellees; and the correctness of this holding of the court is the important question presented by this appeal.

It is contended by appellants that upon the death of Cornelia Catherwood the debt which had previously been joint became joint and several, and that the equitable principle suggested by appellee has, under the statutes and judicial decisions of this state, no application. In that view we concur.

Sections 87 and 88 of the Decedents' Estates Act (§§3153 and 3154 Burns 1926) provide:

"87. No action shall be brought by complaint and summons against any executor or administrator and any other person or persons, or his or their legal representatives, upon any contract executed jointly, or jointly and severally, by the deceased and such other person or persons, or upon any joint judgment founded thereon; but the holder of said contract or judgment shall enforce the collection thereof against the estate of the decedent only by filing his claim as provided in the preceding section."

"88. Every contract executed jointly by the decedent with any other person or persons, and every joint judgment founded on such contract, shall be deemed to be joint and several for the purpose contemplated in the last preceding section; and the amount due thereon shall be allowed against the estate of the decedent as if the contract were joint and several."

In *Ralston* v. *Moore* (1885), 105 Ind. 243, 4 N. E. 673, the Supreme Court, in construing the above sections of the Decedents' Estates Act, the opinion being written by Mitchell, J., used this language:

"Upon the death of one of two joint debtors, the creditor has a right to collect his claim at law from the

survivor, or, at his option, proceed as the statute points out, against the estate of the decedent." In an earlier case (*Martin* v. *Densford* [1833], 3 Blkf. 295) the Supreme Court, in discussing the doctrine that a party may not proceed to collect his claim in a court of equity if he have a full and complete remedy at law, stated the law to be: "It is true that it is a well settled general principle that a party cannot apply to a court of equity if he have a full and complete remedy at common law. To this general and salutary principle there are, however, a few exceptions, one of which is where the debtor is dead and the creditor has to proceed against his heirs, executors, or administrators; in such cases courts of equity have concurrent jurisdiction with courts of law; and the creditor may elect into which court he may go." See, also, *Unknown Heirs of Whitney* v. *Kimball* (1853), 4 Ind. 546; *Kimball* v. *Whitney* (1860), 15 Ind. 280; *Newman* v. *Gates* (1905), 165 Ind. 171, 72 N. E. 638; *Small* v. *Davis* (1895), 12 Ind. App. 635, 40 N. E. 934, 27 C. J. 746, n. (58).

It follows that a cause of action, held jointly against two or more debtors *ex contractu*, becomes upon the death of one of the joint debtors, as against his estate, a joint and several debt; and the creditor may elect to pursue the living joint debtor or debtors, or he may elect to file his claim against the estate the same as if the claim had originally been several; or he may simultaneously pursue both courses. He could, of course, have but one satisfaction of the debt.

We conclude that the court erred in holding that the suit to set aside the conveyance could not be maintained.

It is urged by appellee, however, that even if the trial court erred in holding that the equitable remedy was not now available to appellants, the judgment must, nevertheless, be affirmed. It is argued that Cornelia Catherwood at no time had any legal or equitable in-

terest or estate in the land in controversy which was subject to sale to make assets to pay her debts. The contention is that, under the will, she did not receive a one-fourth interest in the Ambia farm; that the real estate was devised to her and the three children for the sole use and benefit of the children; that she was the holder of the bare legal title for the use of the children. In other words, that her estate was a trust estate and nothing more.

It is agreed by the parties that whatever interest Cornelia had in the land came to her by virtue of item five of the will, and, in determining what the interest was, the only parts of the will requiring consideration are items five and ten above set out.

In support of their contention that Cornelia received only a trust estate, appellees call attention to the provision in item five that the net profits from the farm should go to the support and education of the testator's children, and to the provision of item ten that the children, as fast as they should become of age, should receive their respective portions of the income.

In item five of his will, Allen T. Catherwood directed his executors to comply with his contract with Hoopes for the purchase of the Ambia farm, and specifically provided that the land "shall be deeded by the said Hoopes or his legal representatives to my wife and children jointly." The court found specially that this provision of the will had been carried out, and that after the death of the testator the conveyance was made as directed. If there were no other words of the will relating to the land, except the provision of item five which we have here quoted, there could be no question but that Cornelia was vested with a fee-simple estate in the undivided one-fourth interest in the land to be held jointly with the three children.

It is a well settled rule in the construction of wills

that where an estate in fee-simple is devised in one clause of a will in clear and unambiguous terms, it cannot be taken away or cut down by subsequent provisions of the will unless the intention to do so is manifest from words as clear and definite as those which created the fee. *Boren* v. *Reeves* (1920), 73 Ind. App. 604, 123 N. E. 359. It certainly cannot be said that either the subsequent clause in item 5 directing that the net profits from the farm should go to the support and education of testator's children, or the provision of item 10, or both combined, are, under the rule stated, sufficient to destroy the estate in fee clearly indicated by the previous clause of item 5 to which we have referred.

It is significant that the devise to the widow is in exactly the same words as the devise to the three children; no one is contending that the will gave to each of them an interest less than the fee to one-fourth of the farm. It is to be observed, too, that the testator did not direct that *all* the net rents should be given to the children or that all should be used for their education and support; and the will made no further disposition of the remainder of net rents after the support and education of the children; there is the mere direction that the remainder be put out at interest and secured by mortgage.

The reasonable construction to be placed upon the will is that the fee of the Ambia farm should go to the widow and three children jointly, and that while the children were young and in need of support and education their share of the net rents should be devoted, as far as necessary, to their support and education, the residue, if any, to be put at interest.

It is further contended by appellees that if this court should hold that, under the will, Cornelia took the fee of the undivided one-fourth of the land devised, still

appellants could not prevail, for the reason that Cornelia's interest was that of a joint tenant, which upon her death went to her children, the surviving joint tenants, free from the claims of her creditors, the conveyance by her to her son being fraudulent and void. The contention is without merit.

It is well settled that a conveyance of his interest by one joint tenant during his lifetime operates as a severance of the joint tenancy as to the interest so conveyed, and destroys the right of survivorship in the other joint tenants as to the part so conveyed. *Dotson* v. *Faulkenburg* (1917), 186 Ind. 417, 116 N. E. 577. See, also, *Wilkins* v. *Young* (1895), 144 Ind. 1, 41 N. E. 68, 55 Am. St. 162; *Sharpe* v. *Baker* (1912), 51 Ind. App. 547, 96 N. E. 627, 99 N. E. 44. And, as is correctly stated in a valuable text: "If one of two joint tenants conveys his interest to the other, the estate is turned into an estate in severalty; but if one of three or more joint tenants conveys to a cotenant, the purchaser remains a joint tenant with the others as to their original interests, and becomes a tenant in common as to the share purchased by him." 33 C. J. 911, 17. It is also the law that as between a fraudulent grantor his privies, heirs and devisees and the fraudulent grantee the conveyance is valid; it is invalid only as to creditors. *Kitts* v. *Willson* (1894), 140 Ind. 604, 39 N. E. 313.

In the light of these principles it follows that, in the case at bar, the fraudulent conveyance of Cornelia Catherwood to her son destroyed the joint tenancy as to her, and the son thereafter held the interest thus conveyed to him as tenant in common subject to the rights of Cornelia's creditors to have the deed set aside, and to subject the interest to sale to satisfy their claims.

The court found, among other things, that long prior

to the commencement of this suit, in a proceeding originally begun by Cornelia and her two daughters against appellee Robert Catherwood, the Ambia farm was partitioned; that the court adjudged Robert to be the owner of the undivided three-fourths part thereof, and Naomi Hokenson the undivided one-fourth part, the decree reciting that Cornelia, at the time the decree was rendered, had no interest in the land. Appellees call attention to the facts so found and that the judgment had not been set aside, and contend that it is a bar to recovery by appellants. The contention cannot prevail.

The validity of the judgment in partition was put in issue by the pleadings. None of appellants was a party to the partition judgment; nor did appellants or any of them stand in privity with any party thereto. The only parties to the partition suit at the time the judgment in partition was rendered were Naomi Hokenson and appellee Robert Catherwood. As a general proposition the administrator is the personal representative of the decedent and stands in privity with the decedent; but in a suit to set aside a conveyance made by the decedent in fraud of creditors, the administrator represents the creditors and not the decedent. The fraudulent deed made by Cornelia Catherwood was binding upon her, but it was not binding upon the defrauded creditors, nor upon the administrator of her estate. The statutes of this state expressly authorize an administrator to prosecute a suit to set aside a fraudulent conveyance of his decedent and to subject the land so fraudulently conveyed to sale to make assets to pay the decedent's debts whenever the personal estate is insufficient. §108 Decedents' Estates Act, §2333 R. S. 1881, §3180 Burns 1926.

We conclude that the court erred in its conclusions of law.

Judgment reversed with instructions to restate the conclusions of law in harmony with this opinion and to render judgment accordingly.