HOTT, Respondent, vs. WARNER, Administratrix, Appellant.

*November 10—December 7, 1954.*

For the appellant there was a brief by *Kading & Kading* of Watertown, and oral argument by *Charles E. Kading,*

For the respondent there was a brief by *Dakin & Dierker* of Watertown, and oral argument by *Harold M. Dakin* and by *Jack Trager* of Ottawa, Illinois.

STEINLE, J.  Counsel for defendant upon oral argument and in their brief ask the court to consider the relationship of the parties both before and after the divorce action and certain equities which they feel should have some effect upon the determination of the issues.  We consider, however, that the issues are determined by rules of law which would prevent the court from considering the equities which defendant claims should have some bearing.

At the time of the entry of the divorce decree plaintiff had a vested interest in the policy subject to be divested only in the manner reserved in the policy contract. Sec. 246.09, Stats. *Christman v. Christman* (1916), 163 Wis. 433, 157 N. W. 1099.  By the terms of the policy Griesbach reserved the right to change the beneficiary named therein, but it is undisputed that he never exercised that right after plaintiff became the named beneficiary.  It will be noted that the stipulation for judgment in the divorce action does not in any manner affect plaintiff's property and that it is recited therein that she will make no claim "in connection with any and all other property that *he* may own." (Emphasis supplied.)  He had no interest whatever in her property in the policy.  Accordingly her stipulation cannot be said to affect any property which "he may own."

We believe that the applicable rules are correctly stated in *Wallace v. Mutual Benefit Life Ins. Co.* (1906), 97 Minn. 27, 106 N. W. 84.  In that action a divorce decree was entered dissolving the marriage of Emma G. Wallace and Monroe E. Wallace.  Prior to the granting of the divorce a stipulation was entered into between the parties by the terms of which the husband agreed to provide and the wife agreed to accept

certain amounts and property in division of the estate of the husband. The stipulation also provided that upon performance by the husband of his part of the agreement (p. 29), "plaintiff will and does hereby fully and forever release, exonerate, and relinquish to defendant and his heirs and assigns any and all claims, demands, rights, and interest whatsoever which she has now or ever has had in and to any of defendant's property, . . ." Following the entry of the divorce decree the husband brought an action for the purpose of obtaining a judgment directing the former wife to release to him her interest in an insurance policy in which the wife had been named beneficiary. Neither the stipulation nor the judgment entered in the divorce action made any reference to the insurance policy. The court said (p. 29):

"As soon as the policy was issued Mrs. Wallace acquired a vested interest therein, of which she could not be deprived without her consent, except under the terms of the contract with the insurance company. No right to change the beneficiary was reserved. Her interest in the policy was her individual property, subject to be divested only by her death, the lapse of time, or by the failure of the insured to pay the premiums. She could keep the policy alive by paying the premiums, if the insured did not do so. It was contingent upon these events, but it was free from the control of her husband. He had no interest in her property in this policy, contingent or otherwise. Her interest was free from any claim on the part of the insured or his creditors. He could deprive her of her interest absolutely in but one way, by living more than twenty years. We are unable to see how the plaintiff's interest in the policy was primary or superior to that of the husband. Both interests were contingent, but they were entirely separate and distinct, the one from the other. The wife's interest was not affected by the decree of court which dissolved the marriage contract between the parties. It remains her separate property, after the divorce as before. The decree made no disposition of her property. It merely awarded her a portion of what belonged to her husband and in

which she then had an inchoate interest. She was awarded alimony out of the estate of her husband.

"By the contract the wife agreed to relinquish her interest in 'all claims, demands, rights, and interest whatsoever which she now has or ever has had in and to any of the defendant's property . . . arising from the relation of husband and wife,' and agreed to sign all papers necessary to effect this result. This language refers to his property, not to her property. She does not thereby agree to release to him any interest in any property which she owns in her own right. The contract no more refers to her interest in this insurance policy than, for illustration, to her interest in any government bonds registered in her name which her husband may during the period of coverture have presented to her. Neither could it properly be said to arise out of the relation of husband and wife. The fact that she was his wife at the time the policy was issued may have been, and undoubtedly was, the reason why she was named as beneficiary in the event of his death. But her property interest in the policy after it was issued did not in any reasonable sense arise out of the marriage relation."

It will be observed from the preceding quotation that in the policy involved in the *Wallace Case* no right to change the beneficiary was reserved. It is in that single respect that the cases are different in their facts. We believe, however, that that is immaterial because in the instant case Griesbach never exercised the right to change the beneficiary—the only manner in which he could have divested plaintiff of her rights under the policy.

The United States bonds are the expression of and contain the terms of contracts between the United States and the persons named therein as owners. It is recited in each of the bonds that it is issued pursuant to certain treasury department circulars "to which reference is made for a statement of the rights of holders, as fully and with the same effect as though herein set forth." Applicable provisions of these

regulations contained in No. 530, fifth revision, dated June 1, 1942, are as follows:

"Sec. 315.2 *General.* United States savings bonds will be issued only in registered form. The name and complete post-office address of the owner, as well as the name of the co-owner or designated beneficiary, if any, and the date as of which the bond is issued will be inscribed thereon at the time of issue by an authorized issuing agent. The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in these regulations, will be considered as conclusive of such ownership and interest. . . ."

"Sec. 315.4 *Authorized forms of registration, series E.* Bonds of series E may be registered only in the names of individuals (natural persons), whether adults or minors, in their own right in one of the following forms of registration: . . .
"(b) *Two persons; co-ownership form.* In the names of two (but not more than two) persons in the alternative as co-owners, for example:
" 'John A. Jones *or* Mrs. Ella S. Jones.'
"No other form of registration establishing co-ownership is authorized. . . .
"Sec. 315.8 *Not transferable.* United States savings bonds are not transferable and are payable only to the owners named thereon except in case of the disability or death of the owner or as otherwise specifically provided herein, but in any event only in accordance with the provisions of these regulations. Accordingly, savings bonds may not be sold or hypothecated as collateral for a loan and may not be used as security for the performance of an obligation except as expressly provided in these regulations."

"Sec. 315.32 *Payment or reissue.* A savings bond registered in the names of two persons as co-owners in the form 'John A. Jones *or* Mrs. Mary C. Jones,' will be paid or reissued as follows: . . .
"(b) *After the death of the one co-owner.* If either co-owner dies without having presented and surrendered the

bond for payment to a federal reserve bank or the treasury department, the surviving co-owner will be recognized as the sole and absolute owner of the bond, and payment will be made only to him: *Provided, however,* That if a co-owner dies after he has properly executed the request for payment and after the bond has actually been received by a federal reserve bank or the treasury department, payment of the bond, or check if one has been issued, will be made to his estate (see subpart P hereof). Upon proof of the death of one co-owner and appropriate request by the surviving co-owner the bond will be reissued in the name of such survivor alone, or in his name with another individual as co-owner, or in his name payable on death to a designated beneficiary."

Since the bonds were not paid prior to the husband's death the plaintiff has by virtue of the terms of the foregoing regulation become their sole owner. The co-owner having died, the government by the terms of the regulations assumed the duty to pay the proceeds thereof to the survivor. What has been said with respect to the effect of the stipulation made at the time of the disposition of the divorce action and regarding its effect upon the life insurance policy also applies here. The stipulation extinguished all claim of the plaintiff against the property of Griesbach but in no way affected plaintiff's property. The bonds and their proceeds became the property of plaintiff at the death of Griesbach. For a case quite similar in its facts and resulting in a like conclusion see *Franklin v. Pope* (1950), 81 Ga. App. 729, 59 S. E. (2d) 726.

*By the Court.*—Judgment in each case is affirmed.