THARP *v.* BESOZZI, ADMINISTRATRIX, ETC.

[No. 18,972. Filed August 20, 1957. Rehearing denied October 11, 1957. Transfer denied November 27, 1957.]

74

*Byron E. Bamber,* of Hammond, for appellant.

*Galvin, Galvin & Leeney* and *Edmond Leeney,* of Hammond, for appellee.

PFAFF, J.—The appellant, Thelma C. Tharp, and the appellee's decedent, Arthur Morrison, were one time husband and wife, and during the period of such relationship they acquired an equity in real estate, bank accounts, a postal savings account and a number of United States savings bonds, series "E," all of which property they held in their joint names with right of survivorship. The appellant filed suit for divorce against appellee's decedent on April 4, 1946, and while said suit was pending the parties entered into a property settlement agreement under the terms of which the appellee's decedent was to have the account in the Calumet National Bank in the sum of $2,522.87, the balance due on the Smith contract in the sum of $2,400.00, the equity in a house valued at $2,650.00 and United States savings bonds series "E" with a then surrender value of $8,600, totaling in all the sum of

$16,172.82. Under the terms of said agreement the appellant received the postal savings account in the sum of $1,800.00 and the savings account in the Mercantile National Bank in the sum of $10,200.00, of which $450.00 belonged to her father, making the net settlement received by her in the sum of $9,750.00. The divorce was granted on October 4, 1946, but the court's decree neither incorporates said agreement as a part thereof nor ratifies it by reference. Arthur J. Morrison died November 15, 1953 and the appellee, on December 23 of that year, was appointed administratrix with the will annexed of his estate and as such she examined the contents of his safety deposit box and found the series "E" savings bonds mentioned in the property settlement agreement heretofore described. The names of the payees had not been changed from the time of their original issue and are as follows: Mrs. Thelma Morrison or Mr. Arthur Morrison; Mr. Arthur Morrison or Mrs. Thelma Morrison; Mr. Arthur J. Morrison or Mrs. Thelma C. Morrison. The bank account in the Calumet National Bank was still in the joint names of Arthur and Thelma Morrison, although its balance had been reduced to $1,733.19.

By reason of the fact that Thelma C. Morrison, now Thelma C. Tharp, the appellant herein, still appears of record to be the joint owner of said Calumet National Bank account and a co-owner of said series "E" savings bonds, the appellee, as administratrix with the will annexed of the estate of Arthur J. Morrison, deceased, brought this suit seeking a judgment declaring her, in her trust capacity, to be the owner of said bank account and said bonds and that the appellant be found to have no interest therein. The appellant answered agreeable to Rule 1-2 and, in addition thereto, filed a cross-complaint in three paragraphs in the first of which she seeks to replevin the pass book for the Calumet National Bank account which she claims is

hers as the survivor of a joint ownership. In the second paragraph of her cross-complaint she seeks to recover possession of the series "E" bonds for the same reason and in the third paragraph thereof she seeks to recover possession of a policy of insurance on the life of Arthur J. Morrison, of which she claims to be the beneficiary. The case was tried to the Jasper Circuit Court which found for the appellee on her complaint and against the appellant on paragraphs 1 and 2 of her cross-complaint and for her on paragraph 3 thereof. It is the judgment of the court that the appellant, as the ostensible co-owner of the series "E" bonds in controversy, shall within thirty days surrender the same for payment and pay the proceeds thereof to the appellee and that the appellee is entitled to all money on deposit in the Calumet National Bank and that the appellant is entitled to possession of the life insurance policy sued for in the third paragraph of her complaint.

This appeal presents no question as to the judgment for the appellant on the third paragraph of her complaint and we therefore affirm the same without further comment. The major question before us concerns the validity of the court's judgment in respect to the United States savings bonds and its solution seems to involve matters of first impression in the State of Indiana. Acting under its constitutional powers to borrow money on the credit of the United States the Congress has authorized the Secretary of the Treasury to issue savings bonds subject to such terms and conditions as he may prescribe. Clothed with such authority the Secretary of the Treasury promulgated Circular 530 containing regulations defining the rights of owners of series "E" savings bonds. It has been held that these regulations have the force of federal law, *United States* v. *Birdsall* (1914), 233 U. S. 223, 34 S. Ct. 512, 58 L. Ed. 930; *United States* v. *Jano-*

*witz* (1921), 257 U. S. 42, 42 S. Ct. 40, 66 L. Ed. 120, and that no state law can vary the terms of contract created by said regulations between the United States and the purchasers of its bonds or derogate its full enforceability. *Irvine* v. *Marshall et al.* (1857), 20 How. 558, 61 U. S. 558, 15 L. Ed. 994; *Ruddy* v. *Rossi* (1918), 248 U. S. 104, 39 S. Ct. 46, 63 L. Ed. 148. We assume that the term "state law" includes law by judicial decision as well as law by legislative enactment.

Sec. 314.4 of said regulations provides for the registration of savings bonds in the names of two persons in the alternative as co-owners and no other form of registration establishing co-ownership is authorized. Sec. 315.11 makes savings bonds nontransferable and payable only to the owners named thereon except under circumstances not pertinent to this litigation. Sec. 315.45 specifies the manner in which bonds registered in the names of two persons as co-owners shall be paid. It provides (1) payment will be made to either co-owner upon his individual request during the lifetime of both; (2) any bond will be reissued to any designated person during the lifetime of both co-owners upon the request of both where the co-owners are divorced or legally separated or their marriage annulled after the issuance of the bond; and (3) if either co-owner dies without having presented and surrendered the bond for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond, and payment or reissue will be made only to such survivor as though the bond were registered in his name alone. Sec. 315.13 provides for the recognition of conflicting claims as to the ownership or interest in such bonds as between co-owners when established by a valid judicial proceeding providing such proceeding does not give effect to an attempted voluntary transfer *inter vivos* of the bond, or would defeat or impair the right of survivor, con-

ferred by "these regulations upon a surviving co-owner or beneficiary." This section further provides that a divorce decree ratifying or confirming a property settlement agreement between husband and wife, or otherwise settling their respective interests in savings bonds, will be recognized and will not be regarded as a proceeding giving effect to an attempted voluntary transfer *inter vivos.*

The appellant contends that these sections of the conditions and regulations under which the bonds in suit were issued and which are part of the terms of the contract between the United States and Arthur J. Morrison in his lifetime absolutely bar the appellee from a recovery in this case. She says said decedent could have done any one of three things in his lifetime that would have saved his rights in the bonds in suit:

1. He could have had the property settlement between himself and the appellant ratified and confirmed by the court's decree through which he was divorced from her;

2. He could have requested payment to himself as a co-owner and surrendered the bonds for that purpose, and

3. He could have joined with her in a joint request that said bonds be reissued in his name alone.

He made no attempt to pursue either of these remedies although he lived more than seven years after the property settlement, upon which the appellee now relies, was executed. The result was the plaintiff's decedent, a co-owner with the appellant of the bonds in suit, died without having presented and surrendered them for payment or reissue. This, the appellant contends, made her the absolute owner of said bonds as provided by the regulations under which they were issued. She disposes of the property settlement agreement with the assertion that it is an attempted volun-

tary transfer *inter vivos* of the bonds involved which would defeat her right of survivorship and, not having been confirmed or ratified by the divorce decree, is of no binding force or effect. In support of this proposition she refers us to *Hott* v. *Warner* (1954), 268 Wis. 264, 67 N. W. 2d 370; *Franklin* v. *Pope* (1950), 81 Ga. App. 729, 59 S. E. 2d 726; *In re: Di Santo's Estate* (1943), 142 Ohio St. 223, 51 N. E. 2d 639. In both the Hott and Franklin cases husbands and wives were co-owners of United States savings bonds. In both cases there was a property settlement and divorce after which the husband died. In each case the court held the bonds belonged to the surviving co-owner and not to the husband's estate. In both cases, however, the property settlement involved was wholly silent as to the disposition of the bonds, and their ownership status was left the same after the settlement as it was before. The Di Santo case did not involve bonds held by the husband and wife as co-owners nor the effect of a property settlement agreement on their ownership status. In that case *A* bought bonds registered in his own name but payable at his death to *B*. The question was whether, upon *A's* death, the bonds belonged to *B* or were subject to administration as assets of *A's* estate. In deciding the case the Supreme Court of Ohio said:

"... While we agree that one of the purposes of such provisions (treasury regulations such as we have here) was to facilitate payment, we are definitely of the opinion that the terms of the contract between the government and the bondholder are sufficient to and do pass title to the named beneficiary upon the death of the registered holder."

We can find no help in this case because the beneficiary had made no attempt to dispose of his interest in the bonds before the death of the registered owner and logically the effect of such a disposition of interest on

the ultimate ownership of the bonds was not discussed or decided by the court.

We have examined many cases from many jurisdictions and have found none in which the court has permitted a surviving co-owner to repudiate a bona fide agreement whereby she has surrendered her interest in bonds to her co-owner for a valuable consideration and upon the co-owner's death claimed the absolute ownership thereof for the sole reason that such deceased co-owner had not, during his lifetime, cashed the bonds or taken steps to have them reissued in his name alone. The nearest approach to such a situation is the case of *Lemon* v. *Foulston* (1950), 169 Kan. 372, 219 P. 2d 388. In that case Bates T. Hamilton and Dimmie E. Hamilton were married in 1911 and divorced on February 6, 1946, the decree of divorce making no provision for the settlement of property rights between them. They subsequently purchased United States savings bonds as co-owners and Bates T. Hamilton, the former husband, took and retained possession of them without making any effort at any time to cash or cause them to be reissued in his name as sole owner. Upon the death of Bates T. Hamilton, his former wife, Dimmie, remarried to one Lemon, as the surviving co-owner of the bonds brought suit against Foulston, administrator of the Bates Hamilton estate, to recover possession of said bonds. During the course of the trial the administrator, over the plaintiff's objection, introduced evidence tending to prove an oral gift of Dimmie's interest to Bates and that Dimmie had been willing to formally consent to a reissue of the bonds in Bates' name alone. The trial court found for the administrator and Dimmie appealed. In reversing the judgment the Supreme Court of Kansas said that the United States Treasury Department regulations governing savings bonds applied and upon Bates' death the bonds became the sole property of Dimmie as the

surviving co-owner. In reference to the objectionable testimony the court said it was incompetent as tending to vary the terms of the contract evidenced by the bonds and the treasury regulations under which they were issued. If this case were binding on us we would feel constrained to reverse the present judgment. To do so would, of course, sanction the position of the appellant whose conduct, while not fraudulent perhaps, at least savors of flagrant, unfair dealing. She does not question the execution of the property settlement nor does she contend that the same was executed through fraud or duress. Admittedly she got all she was to get under said agreement and now she seeks to get all that was set off to the appellee's decedent solely because he neglected to cash the bonds or have them reissued during his lifetime. Surely principles of equity foreclose her right to use the treasury regulations as a means to accomplish such a purpose.

Our research on the subject convinces us that as far as the United States is concerned the bonds in suit are the absolute property of the appellant and that no state court or legislature can compel the government to pay them to any one else or to recognize any one else's interest in them except as expressly provided by the regulations under which they were issued. See notes 140 A. L. R. 1435, 161 A. L. R. 170, 168 A. L. R. 245, and 173 A. L. R. 550. However, this is not a suit against the government for the payment of the bonds nor does it seek directly or indirectly to compel the government to recognize appellee's alleged interest in them. The judgment herein merely enjoins the appellant to surrender the bonds in controversy for cash in compliance with the treasury regulations. After she has done that and the bonds have been paid to her the government has fully and completely discharged its contract and can have no interest whatever in the conclusion of an Indiana court that

the proceeds of such bonds, when received by the appellant, shall be impressed with a trust growing out of a contract with which the government had nothing to do and of which equity and fair dealing require performance. As was said in *District of Columbia* v. *Wilson* (1954), 216 Fed. 2d 630:

". . . The regulations appear primarily designed to protect the Treasury as against adverse claimants in paying interest and principal of the bonds to the registered owner. The Treasury commonly has no concern with the funds or their disposition once it has paid them to the registered owner. Its contract has been then fulfilled. In the present case, as in the case supposed, no breach of the regulations is produced. Indeed, where no purpose to defraud the Government has appeared, numerous courts have directed the registered owner to cash United States savings bonds and have ordered the proceeds paid to, and held in trust for, the true owner, notwithstanding the Treasury regulations. See *Makinen* v. *George* (1943), 19 Wash. 2d 340, 142 P. 2d 910; *Union Nat. Bank* v. *Jessell* (1948), 358 Mo. 467, 215 S. W. 2d 474; *Katz* v. *Driscoll* (1948), 86 Cal. App. 2d 313, 194 P. 2d 822; *In re Hendricksen's Estate* (1953), 156 Neb. 463, 56 N. W. 2d 711."

In *Chase* v. *Leiter* (1950), 96 Calif. App. 2d 439, 215 P. 2d 756, the court said, after quoting Sec. 315.13 of the Treasury regulations:

". . . If the parties voluntarily enter into an agreement concerning interests in the bonds, which agreement is approved in a divorce decree, the government will recognize such an agreement. It is logical that if the parties voluntarily agree to a particular treatment of bonds and such agreement is approved in this action, the government could and would have no objection. The principal thing the government wants to prevent is A giving away B's rights without B agreeing to it.

". . .

"Even if the regulations prevent the court from holding that title to the bonds was changed, the

court can order the widow to act so as to carry out the agreement she, entered into."

With respect to the savings account in the Calumet National Bank, the appellant insists that by permitting the account to remain in the joint names of himself and the appellant, with right of surivorship, for more than seven years, the presumption arises that the decedent intended the legal effect of his acts as he knew, or is presumed to have known, that unless he changed the account so as to destroy the joint tenancy, the survivorship feature of the contract with the bank would cause title to the account to vest in the co-owner's name should he precede her in death. We see no merit in this proposition. There are no treasury regulations to prevent the settlement agreement between the appellant and the appellee's decedent being afforded full satisfaction and credit by the court. By such agreement the apellant assigned all her interest in said bank account to the appellee's decedent and there is nothing in the record to indicate that he did anything at any time to revest title in the appellant. His do nothing attitude certainly did not accomplish such purpose. The right of one joint tenant to dispose of his interest in property held jointly with another is well recognized. *Morgan* v. *Catherwood* (1929), 95 Ind. App. 266, 167 N. E. 618; *Clausen* v. *Warner* (1948), 118 Ind. App. 340, 78 N. E. 2d 551.

Judgment affirmed. Crumpacker, C. J., Cooper, P. J., and Bowen, Kelley and Royse, JJ., concur.

NOTE.—Reported in 144 N. E. 2d 430.