WOLF, PERSONAL REPRESENTATIVE *v.* WOLF

[No. 769A126. Filed June 15, 1970. Rehearing denied September 9, 1970.]

252

*Rice & VanStone*, of Evansville, for appellant.

*Edwin W. Johnson, John L. Carroll, Charles C. Griffith, Johnson and Carroll*, of Evansville, for appellee.

HOFFMAN, P.J.—The issue presented by this appeal is: Is a divorced spouse entitled to jointly owned United States Savings Bonds, Series "E", upon the death of her former husband when there is a property settlement incorporated into the decree and it does not specifically mention the bonds?

Trial was to the court and judgment was for plaintiff-appellee, Dorothy M. Wolf. From the overruling of her motion for a new trial, appellant brings this appeal.

This dispute arose when appellee's former husband died approximately three years after the divorce and the 27 bonds in question were discovered in the deceased's safety deposit box. On the face of these $50 bonds appears:

"MR. CHARLES WOLF
R. R. 5, Wortman Road
EVANSVILLE, INDIANA
OR
MRS. DOROTHY WOLF"

Based on her motion for a new trial appellant has chosen to brief and argue only the question of the correctness of the trial court's decision, asserting that it is contrary to law.

Appellant asserts that under the applicable cases in Indiana, a divorce decree is the exclusive method of determining property rights between divorced persons. Based on this proposition, appellant argues that the ownership of the bonds was terminated *de jure* when the divorce decree was entered and the complete ownership was revested in the decedent.

The leading case in Indiana and the one heavily relied upon by both parties in this appeal is *Tharp* v. *Besozzi, Admrx., etc.,* 128 Ind. App. 73, 144 N. E. 2d 430 (1957), (Transfer denied). *Tharp* is different on the facts and was distinguished from two out of State cases (Wisconsin and Georgia) which, except for the wording of the settlement agreements, are the same as those presented by this appeal. In *Tharp,* at 80 of 128 Ind. App., at 433 of 144 N. E. 2d, this court, speaking through Judge Pfaff, said:

> "In both cases there was a property settlement and divorce after which the husband died. In each case the court held the bonds belonged to the surviving co-owner and not to the husband's estate. In both cases, however, the property settlement involved was wholly silent as to the disposition of the bonds, and their ownership status was left the same after the settlement as it was before."

Because the instant case cannot be distinguished as was *Tharp,* we must look closer at the two cases distinguished in *Tharp: Hott* v. *Warner,* 268 Wis. 264, 67 N.W. 2d 370 (1954) ; and *Franklin* v. *Pope,* 81 Ga. App. 729, 59 S.E. 2d 726 (1950).

The written agreement in *Franklin* was as follows:

"This said settlement of alimony is hereby accepted by the wife as a full release and quittance of any and all liability, present and future, insofar as any alimony or property adjustment between them is concerned, and the said wife specifically waives and renounces any right of dower or year's support in the estate of the husband." (59 S.E. 2d at 730.)

The appeal court interpreted this provision of the agreement as extinguishing all claims against the deceased's estate which arose because of the marital relationship. It held that the contractual relationship between the deceased, the government and the surviving former wife created by the United States savings bonds did not arise by virtue of the marital relationship and was, therefore, not affected by the stipulation.

In *Hott* the stipulation provided:

"[T]hat the defendant (the plaintiff here) does not now and will not make any further claim against the plaintiff in connection with any and all other property that he may own." (67 N.W. 2d at 370.)

This agreement only released the claim of the former wife against property of the deceased. The stipulation, according to the holding of the court, did not release her property rights in the United States savings bonds held jointly. The court recognized the property interest of the wife and held that, under the terms of their agreement, she did not extinguish her right to *her* property but only her rights to *his* property.

In light of these cases let us turn to the agreement involved in the instant case, § (j) of which is as follows:

"The said Dorothy M. Wolf to release any and all rights, interest and title in any of the residue and remainder of the household furniture and personal property in which she has any claim, interest or title."

Using the *Hott* rationale to interpret this release, it is clear that appellee released *her* rights to property and not

simply her claim to *his* interest in property. Because the disposition of the bonds was not specifically stated in the property settlement, the question now becomes: Do the words "personal property" in § (j) of the settlement agreement, above quoted, include the United States savings bonds, Series "E", in dispute here?

"Personal property" was defined in *Lowrance* v. *Lowrance,* 95 Ind. App. 345, at 357-358, 182 N. E. 273, at 277, as follows:

> "The term 'personal' when used in conjunction with the term 'property' has a definite meaning. By the term 'personal property' we refer to property of a 'personal or movable nature as opposed to property of a local or immovable character.' "

The United States savings bonds here involved are surely within the scope of that definition. However, it is not property in that sense that is our concern in this case. The definition of "property" was further refined in *Dept. of Ins. et al.* v. *Motors Ins. Corp. et al., etc.,* 236 Ind. 1, at 12, 138 N. E. 2d 157, at 163 (1956), as follows:

> " 'Property' in its legal sense means a valuable right or interest in something rather than the thing itself, and is the right to possess, use and dispose of that something in such a manner as is not inconsistent with law. *Dept. of Financial Institutions* v. *Holt, etc.* (1952), 231 Ind. 293, 303, 108 N. E. 2d 629, 634; *Meek* v. *State* (1933), 205 Ind. 102, 105, 185 N. E. 899." See also: *State* v. *Ensley, et al.,* 240 Ind. 472, 487, 164 N. E. 2d 342 (1960).

When speaking of a contract right as property, this court in *Nelson, Admtx.* v. *LaTourrette,* 132 Ind. App. 584, at 586, 178 N. E. 2d 67, at 68 (1961), stated:

> "The term 'property' is one which is often abused and seldom defined or subjected to a careful analysis. It is generally used to denote a subject matter of a physical nature, such as a house, a car, or a cow. It is also used to denote a complex group of jural relations between the owner of a physical subject and all other individuals. When we refer to a contract right as property we are using the

term as a subject matter of property relationship. It is different from a home, a car, or a cow, and thus while a contractual right is not a property right, it may be and is regarded as a subject matter of property rights. 4 Corbin on *Contracts*, ch. 47, § 860, p. 418."

On the basis of the cases cited the United States savings bonds were "personal property" within the settlement agreement. Because of the contractual relationship existing between the appellee, her deceased former husband, and the government, both appellee and decedent had a property relationship to the bonds which differs from the property of the bond itself.

The word "rights" as applied to property in a contract was defined in *Bailey* v. *Miller*, 45 Ind. App. 475, at 477, 91 N. E. 24, at 25 (1909), as follows:

"A right is a claim or title to or interest in anything whatsoever that is enforcible by law. The word 'rights,' as applied to property in a contract, refers to the right to the free use, enjoyment and disposal of it. It also means the possession of the full and complete title, and of all remedies relating thereto." (Citing authorities.)

Surely a husband and wife who are in the process of severing their marital relationship may adjust their respective rights to property and this would include any property relationships created by contract. Appellee and the deceased entered into a written settlement agreement and it was incorporated into the divorce decree.

As a general rule the intention of the parties to a contract is determined by the language employed in the document. *Walb Const. Co.* v. *Chipman,* 202 Ind. 434, 441, 175 N. E. 132 (1931) ; *Albert Johann & Sons Company, Inc.* v. *Echols,* 143 Ind. App. 122, 238 N. E. 2d 685 (1968), (Transfer denied).

In *McClain's Estate* v. *McClain,* 133 Ind. App. 645, at 654, 183 N. E. 2d 842, at 847 (1962), this court quoted from the earlier case of *Walb Const. Co.* v. *Chipman, supra,* as follows:

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties, as expressed in the language used, and to give effect to that intention, if it can be done consistent with legal principles * * *."

By the very terms of § (j) of the settlement agreement appellee released all "rights" which "she" had in the "remainder" of the "personal property", which included the "property" in the savings bonds.

Appellee contends that the rule of *ejusdem generis* would limit the meaning of the term "personal property" to whatever is encompassed in the more specific term "household furniture." However, the rule is ordinarily applied only to statutes or testimentary instruments. The doctrine of *ejusdem generis* is not mandatory and is ignored as frequently as it is applied. *Woods* v. *State*, 236 Ind. 423, 427, 140 N. E. 2d 752 (1957). Appellee did not cite, and we were unable to find, any cases applying the rule to property settlements incorporated into a divorce decree.

We conclude that the United States savings bonds were included within the language of § (j) of the settlement agreement and that appellee released her property rights to them and that, therefore, the bonds or the revenue derived therefrom are the property of the estate.

For the foregoing reasons the judgment of the trial court must be reversed.

Judgment reversed and the trial court is instructed to enter judgment consistent with this opinion.

Pfaff and Sharp, JJ., concur.

White, J. concurs in result.

NOTE.—Reported in 259 N. E. 2d 89.