## LOWRANCE *v.* LOWRANCE ET AL.

[No. 14,339. Filed July 26, 1932. Rehearing denied December 16, 1932.]

*Albert W. Funkhouser, Arthur F. Funkhouser* and *Robert D. Markel,* for appellant.

*Oscar Lanphar* and *Robert W. Armstrong,* for appellees.

NEAL, J.—This was an action brought by Missouria Harrison Lowrance (appellant herein) against appellees to quiet title in her to certain real estate, to construe a will, and to establish her legal status as a widow and heir at law of G. W. Lowrance, the testator. The issues were formed by plaintiff's complaint, consisting of the first, third, fourth, and fifth paragraphs (a demurrer having been sustained to the second paragraph), defendants' answers in general denial thereto, defend-

ants' substituted amended cross-complaint, to which plaintiff answered in general denial.

The first paragraph of plaintiff's complaint alleged that she was the owner of the testator's real estate and sought to have the title thereto quieted in her as to all of the defendants and alleged that the defendants were interfering with her use and occupancy thereof, and asked to have a receiver appointed to preserve said real estate and to collect the rents and profits thereof. The third paragraph is upon the theory that the decedent's will was ambiguous and uncertain and asked the court to construe and interpret said will. The third paragraph alleged that a proper construction and interpretation thereof gave the plaintiff all the real estate as well as all the personal property owned by testator at the time of his death; that said uncertainties and ambiguities created a cloud upon plaintiff's title to testator's real estate not specifically mentioned in the will. This paragraph sought to have the court construe the will and to decree plaintiff to be the owner of all the real estate of which testator died seized and to quiet title in her as against all defendants. The fourth paragraph was upon the same theory as the third, and, in addition to alleging the facts alleged in the third paragraph, alleged that for many years prior to the death of the decedent he and plaintiff were husband and wife; that plaintiff is the widow of deceased; that testator had no surviving father, mother, or children; that a large part of the property of which testator died seized was the joint earnings and accumulations of testator and plaintiff. This paragraph likewise sought to have the will construed and title to said real estate quieted. The fifth paragraph set up a common-law marriage contract; alleged that plaintiff was the surviving widow of the testator and was the owner of the whole of his property and sought to have title to said real estate

quieted. Defendants' substituted amended cross-complaint alleged that defendants were the sole and only surviving heirs at law of testator; that the testator was unmarried and that plaintiff and testator lived together in a state of adultery for many years; that the purported will was invalid. Defendants claimed to be the owners of, and entitled to the immediate possession of, the real estate of which testator died seized, and asked that the title to said real estate be quieted in them.

The issues formed on the first and fifth paragraphs of plaintiff's complaint and the answers in general denial thereto, and defendants' substituted amended cross-complaint with the answer in general denial thereto, were submitted to the jury for trial, and the jury returned a verdict on October 10, 1930, against plaintiff upon her first and fifth paragraphs of complaint and in favor of defendants on their cross-complaint, and found that defendants are the owners in fee-simple of the real estate described in their cross-complaint. The issues formed on the third and fourth paragraphs of complaint and the answers in general denial thereto were submitted to the court for trial without the jury. The court, upon these issues, found against plaintiff and for defendants. The court further found that defendants were entitled to judgment on the verdict of the jury on the first and fifth paragraphs of complaint, and upon the cross-complaint, and upon the court's finding on the third and fourth paragraphs of complaint. Judgment was accordingly rendered and entered quieting title to said real estate in defendants.

The evidence shows that plaintiff became acquainted with deceased sometime prior to August, 1886, at which time she and the deceased began living together; that they lived together for a time without being married and without any agreement to be man and wife; that she left decedent and was in New Orleans for three or

four weeks; that she returned at the request of the deceased, upon his promise that they would be husband and wife; that when she returned to Indiana they began living together again; that they lived together until his death; that plaintiff was 22 years of age and decedent was 34 years of age when they first started living together; that the deceased was 76 years of age when he died. The evidence further shows that they never had any formal marriage ceremony. A number of witnesses were produced by plaintiff tending to prove a common-law marriage, while defendants introduced a number of witnesses in an attempt to prove that plaintiff was not the common-law wife of deceased. This is the principal controverted question of fact and the evidence is very conflicting. It would serve no good purpose to set the same out herein.

The testator, by his will executed on April 24, 1906, attempted to dispose of his property as set forth in the following items of said will: "Item (1). It is my will that all my just and legal debts be promptly paid. Item (2). I give and devise unto Missouria Harrison my real estate located on Sycamore Street, also that fronting on Fifth Street. Item (3). I give and bequeath unto Missouria Harrison all the rest and remainder of my personal property of whatsoever kind and character."

Plaintiff filed her motion for a new trial December 20, 1930, and defendants filed a motion to strike from the files plaintiff's motion for a new trial. The court refused to strike the motion for a new trial from the files and overruled the same. Plaintiff appeals and assigns as error the overruling of said motion.

Appellees earnestly contend that there is no question before this court for the reason that the only error assigned relates to the court's overruling the motion for a new trial; that the motion for a

new trial was not filed in time for the reason that the record affirmatively shows that the jury returned a verdict on October 4, 1930, and that a motion for a new trial was not filed until December 20, 1930, which was fifty-seven days after the jury returned a verdict. It must be remembered, however, that the issues consisted of four paragraphs of complaint, a cross-complaint and answers thereto; that only the first and fifth paragraphs of complaint and the cross-complaint were submitted to the jury upon which a verdict was returned October 4, 1930; that the second and third paragraphs of complaint, with answers thereto, were submitted to the court, whose finding was not entered until November 28, 1930. The questions involved were questions of equity as well as questions of law. The equity jurisdiction of the court had been invoked. It has been held that when a court of equity assumes jurisdiction of a cause, it will retain such jurisdiction for all purposes and decide all questions arising in the cause. *Kuhn* v. *Hays* (1921), 75 Ind. App. 66, 129 N. E. 705. The court, therefore, retained jurisdiction for all purposes until all issues were finally disposed of.

Section 422, Acts 1881, p. 240, being §612 Burns 1926, provides, in part, that: "The application for a new trial may be made at any time within thirty (30) days from the time when the *verdict* or *decision* is rendered. . . ." (Our italics.) In speaking of the terms "verdict" and "decision," as used in this statute, the Supreme Court, in the case of *The Evansville and Richmond R. R. Co.* v. *Maddux* (1893), 134 Ind. 571, 33 N. E. 345, said: "The terms 'verdict' or 'decision,' as used in the statute, have reference to the finding upon the facts, the term 'verdict' signifying the finding by the jury, and the term 'decision' the finding by the court." It is quite evident that the statute contemplates

a determination of the facts upon all the issues, whether made by the jury or by the court, or by both before the thirty-day statutory period for the filing of a motion for a new trial begins to run. In the instant case a determination of the facts upon all the issues was not made until the court entered its finding on the second and third paragraphs of complaint. The time did not, therefore, begin to run for the filing of a motion for a new trial until the entering of such finding on November 28, 1930. See *In re Buzalsky's Estate* (1909), 108 Minn. 422, 122 N. W. 322. We hold that the motion for a new trial, therefore, was filed within the thirty-day statutory period.

Appellant, under her points and authorities 1 to 5, inclusive, insists that the court erred in the giving and refusing to give certain instructions. Appellee, however, contends that the instructions are not properly in the record and cannot be considered by this court. The record before us shows that on March 19, 1931, appellant filed in the office of the clerk of the Posey Circuit Court a motion showing that before the beginning of argument to the jury appellant and appellees each filed their written request for the court to give certain instructions to the jury; that after the conclusion of argument of counsel to the jury, the court instructed the jury in writing and gave to the jury certain instructions tendered by each of the parties, and refused to give certain other instructions so tendered; that appellant duly excepted to the giving and refusal to give certain instructions of which complaint is made herein; that "after said instructions had been given to the jury all the instructions tendered by the parties, including those given to the jury and those refused, together with the exceptions of the parties thereto, were ordered filed with the clerk of this court as a part of the record in this case; that by inadvert-

ence of the clerk no order-book entry was made of said action of the court upon the order books of said court." The motion asked the court to "amend and correct" the records so as to show the facts as set forth in the motion. The record further shows that the "parties by their respective counsel" appeared, thereby waiving notice, and that the record was amended by a *nunc pro tunc* entry, which record, when thus amended, comes to this court properly containing the instructions.

Appellees, as they say in their brief, "most earnestly insist that the *nunc pro tunc* entry was improperly made, for the reason that there was no monument or memorial in the record showing the right to make the *nunc pro tunc,* and nothing to show that the appellant at any time requested the court that an order be made making the instructions a part of the record and that they be filed as a part of the record." Appellees may be correct in their contention, but the amendment has been made and is now a part of the record, and since appellees have not presented their objection to this court by filing an assignment of cross-errors we cannot consider appellees' objection. See *Adler et al.* v. *Sewell et al.* (1868), 29 Ind. 598. We hold, therefore, that the instructions are properly before this court.

Appellant argues that the court erred in the giving of instructions Nos. 5, 6, and 9, as tendered by appellees, and in the refusal to give each of the instructions requested by appellant, numbered 3 and 7.

Appellees' instruction No. 5 told the jury that if they found "it to be a fact that the decedent, George W. Lowrance, and plaintiff (appellant herein) lived and cohabited together, and this relation continued until the death of said George W. Lowrance, and you further find from a preponderance of all the evidence that the same was done with adulterous desires and immoral purposes

and was entered into on behalf of both the plaintiff and the said George W. Lowrance without any intention to marry one another, then the court instructs you if you find all these facts to exist by a preponderance of all the evidence in the case, then you would be justified in finding for the defendants (appellees herein) upon the fifth paragraph of complaint."

The court, by the giving of appellees' instruction No. 6, instructed the jury "that the burden is upon the plaintiff to prove by a preponderance of all the evidence in the case that she lived and cohabited with the decedent, George W. Lowrance, with an honest intention of assuming the relation of wife with the decedent and that he lived and cohabited with her with an honest intention of assuming the relation of husband with her, and the court further instructs you that the burden is upon the plaintiff (appellant herein) to prove by a preponderance of all the evidence in the case that she and the decedent, George W. Lowrance, assumed the relation when they commenced living together as husband and wife with pure and just motives and with an honest desire to live and reside with each other as husband and wife; and the burden is upon the plaintiff to prove that her relation and the relation of the decedent with her were not adulterous, and that they were not entered into with adulterous desires and illicit purposes; and if the plaintiff has failed to prove these facts by a preponderance of all the evidence in the case, then you would be justified in finding for the defendants upon the fifth paragraph of complaint."

Instruction No. 9, of which complaint is made, told the jury that "cohabitation of itself does not constitute a common-law marriage; it is evidence of marriage, and if it is for illicit purposes in the beginning it is presumed to continue; so in this case, if you find from a preponderance of all the evidence that the said George

W. Lowrance and the plaintiff in this case cohabited together, and you further find from a preponderance of all the evidence that their cohabitation was done for illicit purposes and desires between the two, then the court instructs you that such cohabitation does not constitute a common-law marriage; and if you find these facts to exist by a preponderance of all the evidence in the case, then you would be justified in finding for the defendants on the fifth paragraph of complaint."

It seems to be well settled in this state, as well as in other jurisdictions, that, although the relations of the parties were at first illicit, they are not thereby' precluded from thereafter contracting a valid common-law marriage. *Mayes* v. *Mayes* (1925), 84 Ind. App. 90, 147 N. E. 630; *Gordon* v. *Gordon* (1918), 283 Ill. 182, 119 N. E. 312; *Robinson* v. *Ruprecht* (1901), 191 Ill. 424, 61 N. E. 631. As was said in *Mayes* v. *Mayes, supra,* "A cohabitation illicit in its origin is presumed to be of that character, unless the contrary be proved, and cannot be transformed into matrimony by evidence which falls short of establishing the fact of an actual contract of marriage. Such contract may be proved by circumstances, but they must be such as to exclude the inference or presumption that the former relation continued, and satisfactorily prove that it had been changed into that of actual matrimony by mutual contract." Where the cohabitation is shown to have begun meretriciously, the burden is upon the person claiming marriage to show it, independently of presumption. *Gordon* v. *Gordon, supra; Sebree* v. *Sebree* (1920), 293 Ill. 228, 127 N. E. 392.

It is true that appellant had the burden of proving that she was the wife of the decedent and under the law as above expressed, the mere fact that it was shown that her relations with the decedent were illicit and

meretricious in the beginning did not prevent her from showing that subsequently there was a valid common-law marriage between herself and the decedent. It is true that after such illicit relations were shown ■ to exist, the burden rested upon her to show such marriage independently of presumption. It was error for the court to give instructions Nos. 5 and 6, the effect of which was to tell the jury that if the cohabitation was illicit in the beginning, a valid common-law marriage could not thereafter be entered into.

The contentions made with reference to the construction to be placed upon instruction No. 9, given at the request of appellee, discloses that the instruction is somewhat ambiguous and couched in language subject to being misunderstood by the jury. In view of the fact that the judgment must be reversed for other reasons, we deem it unnecessary to say anything further relevant to this instruction as it is not likely that the same will be given upon a retrial of the case.

Appellant next complains of the court's refusal to give instructions Nos. 3 and 7 as tendered by appellant. Instruction No. 3, as tendered, is as follows: "By ■ the statutes of Indiana it is provided that: 'No marriage shall be void or voidable for the want of license or other formality required by law, if either of the parties thereto believed it to be a legal marriage at the time." This instruction merely informed the jury as to what the law is in Indiana, and quoted Sec. 7, 1 R. S. 1852, p. 316, being §9882 Burns 1926. It was error for the court to refuse to give such instruction.

Instruction No. 7, as tendered by the appellant, among other things was drawn to inform the jury that "cohabitation and reputation are sufficient evidence of ■ marriage. . . . The mutual consent of the parties is all that is necessary. . . . The marriage may be inferred from continual cohabitation and reputation as

husband and wife." Since the judgment herein must be reversed and the instant case must be retried, it is sufficient to say that instruction No. 7 does not state the law correctly and the court did not err in its refusal to give such instruction.

Appellant insists that the court erred in not permitting appellant to testify relevant to certain occurrences and conversations between herself and the decedent. It is urged by her that certain portions of testimony was admissible under §9882, *supra*, but suffice it here to say that this section of the statute does not change the rules of evidence. *Castor* v. *McDole* (1923), 80 Ind. App. 556, 148 N. E. 643. Section 552 Burns 1926 provides: "In all suits by or against heirs or devisees, founded on a contract with, or demand against, the ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor." Under this section, appellant was not a competent witness to testify to the facts concerning the subject matter of the questions.

Appellant argues in her brief that "under a proper interpretation or construction of the will, she is the sole devisee and legatee of all of the estate, real and personal"; that if the technical meaning is given the term "personal" as used in the will, the will thereby becomes ambiguous, and the question then arises as to the meaning of the words "all the rest and remainder" of my personal property, when no other disposition of personal property had been made. The term "personal" when used in conjunction with the term "property" has a definite meaning. By the term "personal property" we refer to property of a "personal or movable nature as opposed to property of a local or

immovable character." Black's Law Dictionary. It is to be further noticed that the testator's first item was to the effect that all his "just and legal debts be promptly paid." Such debts would, under the law of this state, be paid out of the personal property, if the personal property were of sufficient amount to pay the same. The testator could well have had in mind, and doubtless did have in mind, that all the personal property remaining after the payment of his "just and legal debts" should then go to appellant.

Judgment reversed for the errors set forth herein, with directions to the trial court to grant a new trial, and with further proceedings in conformity with this opinion.