FAYE OLINGER *v.* THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY ET AL.

[No. 3-672A13. Filed October 3, 1972. Rehearing denied November 8, 1972. Transfer denied March 26, 1973.]

*Probst & Probst,* of Kendallville, for appellant.

*Gates, Gates & McNagny,* of Columbia City, for appellee Forker, *Emerick & Diggins,* of Kendallville, for appellee Insurance Company.

HOFFMAN, C.J.—The issue presented by this appeal is whether the beneficiary originally named in a policy of life insurance is entitled to the proceeds thereof when such beneficiary prevented the insured from exercising his right to change beneficiaries by retaining possession of the insurance certificates.

This cause was tried to the court without intervention by a jury. Pursuant to the written request of the plaintiff, the trial court made special findings of fact and conclusions of law, and thereafter entered judgment for the defendant Lorabel Forker. The motion to correct errors filed by plaintiff was overruled by the trial court and this appeal followed.

On appeal, appellant does not argue that the facts are incorrectly found. Therefore appellant admits, for the purpose of appeal, that the facts were correctly found. *Merryman* v. *Price* (1970), 147 Ind. App. 295, 259 N. E. 2d 883, 888, 22 Ind. Dec. 62 (transfer denied), (Cert. denied, 404 U.S. 852).

The first contention argued by appellant is that the decree of divorce entered between appellant and Oliver Forker, now deceased, changed the ownership of the policy of life insurance.

The facts found by the trial court pertinent to this contention are as follows:

"I.

"This action was originally filed by the Plaintiff Faye Olinger against The Northwestern Mutual Life Insurance Company. The Defendant insurance company filed an interpleader action as a result of which the Defendant Lorabel Forker was made a party Defendant. The Defendant insurance company deposited the proceeds of the insurance policy here in question with the Clerk of the Noble Circuit Court and was thereafter dismissed as a party Defendant in this cause by Summary Judgment entered on June 25, 1970.

"II.

"On September 22, 1919, The Northwestern Mutual Life Insurance Company issued its policy on the life of Oliver Forker, which was Policy No. 1358610. The policy was admitted into evidence as Plaintiff's Exhibit 1, and is herewith made a part of these findings of fact and incorporated herein by reference. The policy was in the principal sum of $1,-500.00. The beneficiary named in the policy at the time it was first issued was Faye T. Forker.*

"III.

"Faye Forker and Oliver Forker, the insured under the life insurance policy were married in 1918. On March 9, 1965, [1955], Faye Forker was decreed a divorce from Oliver Forker. The divorce decree provided as follows with respect to the personal property held by the parties: 'It is further ordered that the Defendant (Faye T. Forker) is the owner of all other personal property and personal effects now on said premises, and that the Plaintiff is the owner of all of the personal goods and chattels now in his posses-

sion.' At the time the divorce decree was entered the life insurance policy was in the possession of Faye Forker.

"* The Plaintiff Faye Olinger was Faye Forker until her remarriage in 1957."

Also, the conclusions of law of the trial court, here pertinent, are as follows:

"II.

"The ownership of Policy No. 1358610, under the terms of the policy, was in Oliver Forker when the policy was issued on September 22, 1919.

"III.

"Ownership of the Policy was not affected by the divorce decree entered on March 9, 1955, in which Faye Forker was granted a divorce from Oliver Forker, and said ownership remained in Oliver Forker."

In *Elliott* v. *Metropolitan Life Ins. Co.* (1946), 116 Ind. App. 404, at 420, 64 N. E. 2d 911, at 917, it was stated:

"It is well settled in Indiana that a policy of insurance is a chose in action with which the insured can do with or dispose of, as he pleases, in the absence of prohibitory legislation or contract stipulations. The policy has all of the characteristics of personal property and can be delivered and transferred as other personal property."

It must be noted that the term "personal property" as used in *Elliott* encompasses more than just chattels. In the case of chattels such as books, pencils or baseball trading cards, their material presence shows their existence; their *situs* denotes their possession. However, personal property in the form of a contract of insurance stands on a different footing. Although the existence of the chose in action may be shown by a written document and the contractual obligations of the parties may be contained therein, the possession of contractual rights and obligations does not depend on the *situs* of the document.

The term "personal property" was discussed in *Wolf* v. *Wolf* (1970), 147 Ind. App. 246, 259 N. E. 2d 89, at 91-92, 21 Ind. Dec. 659, as follows:

" 'Personal property' was defined in Lowrance v. Lowrance, 95 Ind. App. 345, at 357-358, 182 N. E. 273, at 277, as follows:

'The term "personal" when used in conjunction with the term "property" has a definite meaning. By the term "personal property" we refer to property of a "personal or movable nature as opposed to property of a local or immovable character." '

\* \* \*

"The definition of 'property' was further defined in Dept. of Ins. et al. v. Motors Ins. Corp. et al., etc., 236 Ind. 1, at 12, 138 N. E. 2d 157, at 163 (1956), as follows:

' "Property" in its legal sense means a valuable right or interest in something rather than the thing itself, and is the right to possess, use and dispose of that something in such a manner as is not inconsistent with law. Department of Financial Institutions v. Holt, [etc.] 1952, 231 Ind. 293, 303, 108 N. E. 2d 629, 634; Meek v. State, 1933, 205 Ind. 102, 105, 185 N. E. 899.' See also: State v. Ensley et al., 240 Ind. 472, 487, 164 N. E. 2d 342 (1960).

"When speaking of a contract right as property, this court in Nelson, Admtx. v. LaTourrette, 132 Ind. App. 584, at 586, 178 N. E. 2d 67, at 68 (1961), stated:

'The term "property" is one which is often abused and seldom defined or subjected to a careful analysis. It is generally used to denote a subject matter of a physical nature, such as a house, a car, or a cow. It is also used to denote a complex group of jural relations between the owner of a physical subject and all other individuals. When we refer to a contract right as property we are using the term as a subject matter of property relationship. It is different from a home, a car, or a cow, and thus while a contractual right is not a property right, it may be and is regarded as a subject matter of property rights. 4 Corbin on Contracts, ch. 47, § 860, p. 418.'

\* \* \*

"The word 'rights' as applied to property in a contract was defined in Bailey v. Miller, 45 Ind. App. 475, at 477, 91 N. E. 24, at 25 (1909), as follows:

'A right is a claim or title to or interest in anything whatsoever that is enforcible by law. The word "rights," as applied to property in a contract, refers to the right to the free use, enjoyment and disposal of it. It also means the possession of the full and complete title, and of all remedies relating thereto.' (Citing authorities.)"

In the instant case, the divorce decree, in pertinent part, provided:

"It is further ordered that the defendant is the owner of all other personal property and personal effects now on said premises, and that the plaintiff is the owner of all the personal goods and chattels in his possession."

We recognize that the document may have been located on the marital premises, however, the contract itself was the property of the husband and the rights and obligations appurtenant thereto were possessed by him both before and after the divorce decree.

The second contention argued by appellant is that the deceased did not do all within his power to change the beneficiary and thus the trial court could not make the change.

The findings of fact made by the trial court, pertinent to this contention, are as follows:

"V.

"Oliver Forker married Lorabel Forker on June 11, 1955. Thereafter, on September 23, 1955, Oliver Forker wrote to The Northwestern Mutual Life Insurance Company and told the company that he wished to change his beneficiary in the policy in question from Faye T. Forker to Lorabel Forker, and that he did not have possession of the policy. He requested of the company that it take the necessary steps to make this revision in his insurance.

"VI.

"The company through its agents forwarded a form for change of beneficiary on September 16, 1955, together with a letter of explanation. The insured Oliver Forker signed the change of beneficiary form and returned the form on January 11, 1956, and requested of the company that if it

could not issue a duplicate policy, 'is it possible for your agent to call on Faye Forker, R. R. #1, Albion, Indiana, and make an effort to obtain the original policy?' The place on the form for a witness to sign was left blank.

## "VII.

"On January 31, 1956, the company by letter acknowledged receipt of the change of beneficiary form 'from Faye Forker to Lorabel Forker, your wife,' indicated that it must maintain a neutral attitude, and pointed out that the policy required endorsement on the policy of any change of payee by the company. The change of beneficiary form was retained by the company in its files.

## "VIII.

"The insured, Oliver Forker, had his attorney Porter D. Crowell, write to Faye Forker on March 6, 1956, and request the policy. Faye Forker referred the letter to her attorney, Ralph Probst, who later told Porter Crowell that the policy belonged to Faye Forker and 'he could go to hell.' No further attempts were made by Oliver Forker to gain possession of the policy.

## "IX.

"On September 25, 1956, Oliver Forker again wrote to the company and stated that since he was unable to obtain the policy, he was asking for a cash settlement. The company replied by letter on October 11, 1956, pointing out that it could do nothing until it had either the policy or a completed Statement of Loss or Destruction of Policy. During the period from September 16, 1955 to June 12, 1957, Oliver Forker had correspondence with the company and consultation with its agents with reference to not only the change of beneficiary but procuring a cash settlement or a loan on the policy.

\* \* \*

## "XII.

"Oliver Forker suffered a stroke on September 17, 1960. The stroke left him a semi-invalid. Oliver Forker died on May 15, 1967.

\* \* \*

"XIV.

"The insured Oliver Forker did all within his power to effectuate a change of beneficiary in his policy from Faye T. Forker to Lorabel Forker, and a change of beneficiary is found to exist in the policy from Faye T. Forker to Lorabel Forker."

The following conclusion of law is also here pertinent:

"IV.

"Oliver Forker having done all within his power to effectuate a change of beneficiary, a change of beneficiary in the Policy from Faye Forker to Lorabel Forker has been effected."

IC 1971, 27-1-12-14, Ind. Ann. Stat. § 39-4210 (Burns 1965), provides, in pertinent part, as follows:

"When the right of revocation has been reserved, the person whose life is insured, subject to any existing assignment of the policy, may at any time designate a new payee or beneficiary, with or without reserving the right of revocation by filing written notice thereof at the home office of the corporation, accompanied by the policy for suitable indorsement thereon."

Similarly, the policy of insurance here in question contained the following provision:

"No such designation, revocation, change or direction shall be effective unless duly made in writing and filed at the Home Office of the Company (accompanied by this Policy for suitable endorsement) prior to or at the time this Policy shall become payable."

A general rule and exceptions thereto with respect to interpreting such contractual provisions as above set forth are found in *Heinzman, Gdn.* v. *Whiteman, Adm.* (1923), 81 Ind. App. 29, at 35, 36, 139 N. E. 329, at 331 (transfer denied), as follows:

"It is clear that where no mode for making a change in the beneficiary is prescribed, the same may be effected in any

way the insured may choose, so long as he expresses a clear intent to make the change. 29 Cyc 130; 14 R.C.L. 1390. However, where the mode is prescribed, it must be followed, as a general rule, in order to render such change effective. This is true whether the right involved exists by reason of a reservation in the insurance contract, or by reason of the absence of a vested interest in the beneficiary, as is the case in mutual benefit certificates. (Citing authorities.) The following, however, are often cited as exceptions to the general rule stated above: 1. If the society has waived a strict compliance with its own rules, and in pursuance of a request of the insured to change the beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. 2. If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made. 3. If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary; but before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued." (Citing authorities.)

Our research has disclosed several Indiana decisions dealing with similar policy provisions. While not all of these cases refer to *Heinzman,* the general rule and exceptions there set forth have been applied.

The general rule was followed in *Stover, etc.* v. *Stover, Admx., etc. et al.* (1965), 137 Ind. App. 578, at 587, 204 N. E. 2d 374, at 379, 4 Ind. Dec. 519 (transfer denied), as follows:

"[T]his Court is of the opinion that the mere filing of the enrollment card is insufficient to establish substantial compliance with the provisions for a change of beneficiary."

In *Stover,* however, no question was raised concerning wrongful possession of the insurance certificate by a third party.

Exception three to the general rule was controlling in *Hoess, Admtrx.* v. *Continental Assurance Co.* (1960), 130 Ind. App. 562, at 569, 164 N. E. 2d 125, at 129, as follows:

"This is not such a case where the insured has done all in his power which he can do to change the beneficiary, and then some intervening cause or his death before the change is effective has occurred preventing the effectuation of the change so that a court of equity will decree that to be done which ought to be done."

In *Fletcher* v. *Wypiski* (1950), 120 Ind. App. 622, 627, 94 N. E. 2d 916, the general rule and exceptions thereto were quoted directly from *Heinzman* and were followed by the court in holding that a change of beneficiary without surrender of the certificate to the company was valid and that the original beneficiary could not be heard to complain of the company's waiver of the provision policy.

Also, exception one to the general rule was controlling in *Humphrey* v. *Commonwealth Life* (1969), 145 Ind. App. 341, 251 N. E. 2d 45, 18 Ind. Dec. 534, which was a contract action in which the original beneficiary sought recovery against the company for waiving the contractual provisions and allowing a change of beneficiary and loan setoff without return of the document. In affirming the judgment of the trial court which upheld the validity of the change of beneficiary and loan setoff the court, at 350 of 145 Ind. App., at 50 of 251 N. E. 2d, stated as follows:

"In this unique fact situation before us, it is obvious that Eugene V. Chensoff did all in his power to procure the policy itself. He made demand for the policy but was refused, and from his hospital bed was in no position to do more. The insurance company specifically waived the requirement upon notification. At this time Eugene V. Chensoff, in direct correspondence with the appellee, did send what forms the company requested, so both owner and appellee, the two contracting parties, were apprised of the change in the policy in force. This was easily 'substantial compliance.' When the owner of a policy cannot get possession of the document, notice to the company and compliance with their further requests sufficiently guards against fraud to constitute substantial compliance. The rights of the beneficiary, being a mere expectation and not a vested interest, are not harmed. *Fletcher* v. *Wypiski*, 120 Ind. App. 622, 94 N. E. 2d 916 (1950).

"Appellant's argument as to the loan setoff violating a similar provision in the policy is analogous to the change in beneficiary provision. Again the contracting parties knew the situation, and the appellee waived strict compliance with the requirement that the policy be sent in and assigned to them by substituting proper forms which were duly executed."

In the instant case we are concerned with exception two to the general rule stated in *Heinzman, i.e.,* where it is beyond the power of the insured to comply strictly with the mode for changing beneficiaries described in the policy, equity will treat as done that which ought to have been done.

We have hereinabove held that the insured was the rightful owner of the contractual rights and obligations up to the time of his death. The divorce decree did not award the contract to the wife and the *situs* of the certificate did not alter the ownership of the contract rights.

Where, as here, the right to change beneficiaries is reserved, the beneficiary named has no more than a mere expectancy in the proceeds. *Wolf* v. *Wolf* (1970), 147 Ind. App. 246, 259 N. E. 2d 96, 21 Ind. Dec. 670. Therefore, in the case at bar, the refusal of appellant, the named beneficiary, to surrender possession of the document upon the demand of the owner amounted, as a matter of law, to unlawful possession. Under these facts, equity will not permit the beneficiary to profit by her unlawful possession of the document thus preventing the rightful owner from exercising his right to change beneficiaries. Equity demands that the attempted change of beneficiaries be given effect.

Furthermore, appellant cannot profit by seeking strict application of the statutory provision hereinbefore set forth. Such provision can only be read as a general, directory provision, not to be applied where the certificate is lost, destroyed, or where as here, wrongfully withheld from the owner.

The final contention argued by appellant is that the trial court is bound by the insurance company's refusal to change

beneficiaries without return of the certificate. In response to this contention, we merely point out that the construction of the statutes of this State, specifically § 39-4210, *supra*, is a matter for the courts, not for insurance companies. The trial court was not bound by whether or not the insurance company believed it was following the law.

In reviewing this appeal we have not decided the propriety of the trial court's finding and conclusion that the decedent did all within his power to make the change of beneficiary. We need not make such decision. We decide only that under the applicable statutes and case law, equity will not allow one with only a defeasible interest in certain property to prevent the rightful owner from exercising his intentions by wrongfully retaining possession of the owner's property. The judgment of the trial court is, therefore, affirmed.

Judgment affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 287 N. E. 2d 580.